(No. 4907—)

JAMES McABEE, JR., Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed March 18, 1963.*

*Petition of Claimant for Rehearing denied August 30, 1963.*

ANNA R. LANGFORD and THADDEUS B. ROWE, Attorneys for Claimant.

WILLIAM G. CLARK, Attorney General; EDWARD WARMAN, Assistant Attorney General, for Respondent.

FEARER, J.

James McAbee, Jr., has filed his complaint in this Court seeking to recover damages against respondent, charging respondent with certain acts of negligence in its failure to maintain a street, which was under its control, and for which it had a duty to maintain on the date

of the accident. It is also alleged that the State failed to give warning by the posting of signs as to the disrepair of the street, after it had either actual or constructive notice.

The accident occurred on June 9, 1959, at approximately 11 A.M. At said time and place, claimant was riding his bicycle in a southerly direction upon South Park Avenue, having just crossed the intersection of Marquette Avenue (67th Street) on the approach of the New York Central viaduct in the City of Chicago, Illinois.

Claimant contends that, while riding said bicycle, he ran into a hole in the street. He was hurled from said bicycle with such force that he sustained certain injuries, namely, laceration to his tongue, several teeth knocked out, abrasions and contusions.

No answer was filed by respondent. Therefore, a general traverse or denial of the facts set forth in the complaint shall be considered as filed.

Respondent filed a Departmental Report on March 24, 1961. Commissioner Immenhausen, who heard this case, has ably summarized the testimony of respective witnesses testifying for and on behalf of claimant and respondent. He summarized claimant's testimony as follows:

On the day of the accident, he was 23 years old, and resided at 7845 South Indiana Avenue, Chicago, Illinois. He was riding his bicycle in the southbound lane approximately two to three feet from the west curb. The day was clear, visibility was good, and traffic at said time was normal. Just prior to the accident, there was a car directly in back of him and one to his left. There were two lanes of traffic at that point, and he was keeping a lookout ahead. He had never ridden a bicycle in this area before. The bicycle he was riding was in good mechanical

condition. Just prior to the accident, he passed over a manhole, and, in looking ahead, noticed traffic. All of a sudden everything stopped, and he was on the ground, dazed and hurt. He described the hole, which he had hit, as being two feet in length, about six to eight inches in depth, and about four inches in width; and stated that it wasn't even, one part being a little bit lower than the other. After he fell, he heard the screeching of the tires of cars behind him. The area south of the pavement was patched and broken, but there had been some patch work done with asphalt. Two weeks after the accident, he went back, and the hole was fixed. He was assisted at the scene of the accident by a man by the name of Charles Akins, who took him to the hospital.

On cross-examination, he testified that there were no vehicles in front of him, but that there were vehicles in back and to his left. Upon being asked how far the hole was in front of him when he first saw it, he answered "Actually I didn't see it. Not before I hit it." He also answered on cross-examination that there was nothing to obstruct his view. The commissioner interrogated claimant as to why he couldn't see the hole when he noticed the manhole, which was approximately four or 5 feet from the hole. His answer was "I just didn't see it."

The witness, who took him from the scene of the accident, was a policeman. Claimant testified that he could not locate him at the time of the trial, nor could he secure his address.

Claimant's next witness was Anna R. Langford, an attorney, who had represented claimant and identified certain exhibits, being photographs, and testified that the photographs of the area in question were true photographs and true representations of the area. After she

received the photographs, she stated she notified the Highway Department of the condition of the street on June 30, 1959, and three days later the pavement was repaired. Later she took claimant to the spot where the accident occurred and talked to him, asking him to point out the place in the pavement, which was in disrepair, and so indicated on claimant's exhibits Nos. 8 and 9. She examined the hole, which was a few feet south of the manhole cover, and was approximately two feet in length, six or seven inches in depth, and irregular as to lines.

Respondent called, as one of its witnesses, Robert C. Washburn, who was employed as a maintenance field engineer in June and July of 1959, and was assigned to the area wherein this particular street was located. He stated he had occasion to personally examine South Park Avenue on July 20, 1959, and was unable to find any holes in the pavement, but it was wavy.

The next witness for respondent was Walter Raeghowski, who formerly was employed by respondent between the periods of May, 1958 and August 1, 1959, as a section truck driver. His duty was to inspect the area to see if any repairs were necessary to the streets including South Park Avenue on which the accident occurred. Prior to the accident, he inspected this particular street, and did not discover any holes, bumps or depressions, but did find the pavement to be wavy. At the time of the trial, he was not employed by respondent. He stated that, to the best of his knowledge, he did not make any repairs on this particular street in June or July in the year 1959.

Judge Immenhausen, in his commisioner's report, has recommended that the claim be denied, basing his decision primarily on the fact that it is a little hard to

believe that on a clear day, when the pavement was dry, and there were no obstructions to claimant's visibility, that, if there was a hole in the street in the area, which claimant testified to, he should have seen the hole, and thereby avoided the accident. In not so doing, claimant was thereby guilty of contributory negligence.

He also found that it was very questionable that such a hole existed, which caused claimant to fall, based upon the testimony produced at the time of the trial. He was in a better position to pass upon the testimony offered, the demeanor of the witnesses, and the manner in which they answered questions to arrive at his conclusion as to the facts presented by the evidence.

Because of our findings in this case, we do not believe it necessary to prolong the opinion in citing or commenting on the various authorities cited by claimant and respondent in their briefs. As we have held many times, and as have other courts, this Court will not tolerate one testifying that they looked and did not see something, which appeared from their testimony would be very apparent. Also, this Court has held that respondent is not an insurer, any more than a municipality is, of everyone who travels upon its streets or highways. There is a responsibility placed upon the traveling public to operate vehicles in a manner commensurate to conditions claimed, if they do actually exist. If they fail to do so, respondent should not be held liable for damages.

We hereby deny the claim of claimant, James Mc-Abee, Jr.