(No. 74-514—

FRANK WING, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed February 16, 1977.*

HOLLOWBOW, TASLITZ, GROMBACKER and HOLLOW-BOW, by WILLIAM L. SMITH, JR., Attorney for Claimant.

WILLIAM J. SCOTT, Attorney General; RICHARD J. GROSSMAN, Assistant Attorney General, for Respondent.

POLOS, C. J.

This is an action to recover for personal injury and property damage sustained by Claimant, Frank Wing, on April 21, 1973, when the motorcycle he was riding struck a large hole in the pavement of the Stevenson Expressway in Chicago, Illinois. Claimant contends that the State was negligent in maintaining the highway in that it permitted the hole to develop and remain in the pavement and did not warn motorists of its existence. It is Respondent's position that it had no notice of the existence of the hole, and that in any event Claimant failed to establish his freedom from contributory negligence.

Frank Wing testified that on April 21, 1973, at about 9:45 p.m., he left an apartment building he owned

and managed on the northwest side of Chicago and proceeded by motorcycle to his home on the city's southwest side. Wing was an experienced motorcycle rider, having ridden for over 20 years prior to the accident.

It was raining very heavily as Wing proceeded home. He was wearing leather boots, a leather jacket, a helmet and goggles. His route took him southbound along the Stevenson Expressway. Claimant said that he drove this route very frequently and had done so one week prior to the accident.

It was still raining heavily as Claimant approached the Damen Avenue exit ramp of the expressway. At a point approximately 300 yards before the exit ramp Claimant's motorcycle struck a hole in the pavement in the right hand lane. Claimant alleged that he did not see the hole because it was filled with rainwater. He said that he was travelling about 40 miles per hour when he struck the hole. He was thrown over the handlebars of his motorcycle to the pavement. He said he bounced twice on the pavement, skidded for some distance, and finally came to rest 50 to 100 yards from the hole in the pavement. He said that although he was dazed, he was able to remount his motorcycle and complete his trip home.

After arriving at his home, Claimant called the Chicago Police Department, and an officer came to his home and made a report of the accident.

Claimant said that the following day he experienced pain and stiffness in his neck and hip, and sought medical attention.

Claimant said that he also went back to the accident site on the day following the accident and examined the hole in the pavement. He identified two

photographs of a hole approximately four inches deep, and two feet by three feet in size. It appears that the hole had been previously repaired, and the restraining rods under the pavement were clearly visible at the bottom of the hole.

Two days after the accident, Wing saw a chiropractor for injuries sustained in the accident. X-rays were taken, and Claimant said he was advised to stay in bed for a few days. Claimant stated he saw the chiropractor from 10 to 12 times, and that he was billed $342.00. He also claims that he was unable to work for three weeks after the accident, and claims a wage loss of $870.66, and property damage to his motorcycle in the amount of $822.10.

On cross-examination, Claimant admitted that his vision had been obstructed on the night of the accident by the heavy rain, but said that he had not stopped to wipe off his goggles from the time he left his apartment building to the time of the accident. He also said that he had glasses which he wore for both close work and seeing at a distance but was not wearing his corrective lenses at the time of the accident.

Claimant said also that he had traveled the Stevenson Expressway weekly for some time prior to the accident, and that he had done so within one week of April 21, 1973.

Joseph J. Kostur was the sole witness called by Respondent. Kostur was District Safety Claims Administrator for the Department of Transportation and was responsible for investigating traffic accident claims against the State of Illinois. Kostur said that, to his knowledge, the State had not received notice of a hole in the pavement of the Stevenson Expressway at the accident site prior to the accident.

Respondent introduced into evidence a copy of a Department of Transportation investigative report which indicates that the State did have notice of a hole in the pavement on the Stevenson Expressway, approximately one block from the accident site. The report states that on March 29, 1973, the Department of Transportation was notified of holes in the pavement on the Stevenson Expressway at approximately 1400 West and 1700 West. The report also indicates that repair crews were at work on the Stevenson on March 30, and April 2, 3 and 11. Kostur said that those crews should have patched the entire highway on any one of those days.

The report also indicates that the Chicago Communications Center of the Department of Transportation received a report on April 22, 1973, the day following the accident, of two holes in the curb lane of the southwest bound Stevenson Expressway at 1400 West and 1700 West.

Kostur said that these holes were "not exactly" in the area of the Claimant's accident.

It is axiomatic that the State is not an insurer of the safety of all persons who travel upon its highways. *Schuck v. State,* 25 Ill.Ct.Cl. 209. Rather, the State is charged only with using reasonable diligence in maintaining the roadways under its control. To recover on his claim, Claimant thus bears the burden of establishing by a preponderance of the evidence that the State breached its duty to use reasonable care in maintaining the highway at the accident site; that the State's breach of duty was a proximate cause of Claimant's injury; and that Claimant was free of contributory negligence. *Howell v. State,* 23 Ill.Ct.Cl. 141.

Respondent argues strenuously that Claimant has

failed to establish either that the State had actual notice of the existence of the hole in the pavement of the Stevenson Expressway prior to the accident, or that the hole had existed for so long a period as to charge the State with constructive notice of its existence. See *Joyner v. State,* 22 Ill.Ct.Cl. 213, 217. Claimant contends that photographs of the hole, which were introduced into evidence, establish that the condition "was a condition that occurred slowly over many months . . . ," and that the State is thus chargeable with constructive notice of the existence of the condition. Alternatively, Claimant asserts that the Department of Transportation reports prove that the State had actual notice of the hole.

We need not reach this issue however, because we must conclude that Claimant was not in the exercise of due care and caution for his own safety at the time of the accident.

Claimant himself testified that he traveled the Stevenson Expressway weekly and had done so as recently as one week prior to the date of the accident. Claimant also alleges that the deteriorating pavement which caused the hole to form had occurred slowly over many months. If this were true, surely Claimant, in the exercise of due care, would have noticed the hole on one of the prior occasions when he used the highway. This is particularly so in view of the fact that photographs of the hole in question which were introduced into evidence show that it was of substantial size. We have previously held that where one regularly travels along a portion of road, he is chargeable with knowledge of the condition of that road. See *Link v. State,* 24 Ill.Ct.Cl. 69.

We also think that in driving his motorcycle at 40 miles per hour in a torrential downpour on a highway, Claimant exceeded a reasonable speed under the circumstances. There was nothing to stop the Claimant

from proceeding at a slower speed, given the weather conditions, despite a posted minimum speed limit. Such a minimum speed limit is always contingent upon the circumstances, and we think that a motorcyclist travelling in a torrential downpour would in the exercise of due care proceed at a slower speed.

Finally, we note Claimant's testimony that his eyesight was progressively getting worse. Claimant said that he wore one pair of glasses for reading and another for seeing distances, yet he was wearing neither on the night of the accident.

From the foregoing facts, we must infer that Claimant was not utilizing reasonable care under the circumstances at the time of his accident. This claim is denied.